707 P.2d 1192

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Twila MUISE, Defendant-Appellant.**

**No. 8126.**

Court of Appeals of New Mexico.

Aug. 29, 1985.

Certiorari Denied Oct. 1, 1985.

Paul Bardacke, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Michael E. Vigil, Marchiondo & Berry, P.A., Albuquerque, for defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

Defendant, Twila Muise, appeals her convictions and sentences of false imprisonment and battery following a jury trial. Six issues are raised on appeal: (1) whether defendant had a right to a magistrate court trial on the misdemeanor charges; (2) sufficiency of the evidence; (3) error in charging false imprisonment; (4) restriction of cross-examination; (5) claim of bias by the trial court; and (6) merger of offenses.

Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. McCormack*, 101 N.M. 349, 682 P.2d 742 (Ct.App.1984).

## FACTS

On September 29, 1983, Manuella Orona was driving a school bus for the Hobbs Municipal School District. When the afternoon classes ended, Orona drove a busload of school children homeward. Three children of the defendant (Michael, Matthew and Shantel) were passengers on the school bus. Michael and Matthew threw their books on the floor of the school bus before they left it. Shantel picked up their books as she left the bus; Orona helped Shantel gather up the books. Orona had previously cited several of defendant's children for misconduct on the bus. Defendant wanted to confront Orona concerning these citations. Shantel later stated that her two brothers had purposely thrown their school books on the floor of the bus to delay the departure of the bus so that defendant would have time to come to the bus and confront Orona concerning the disciplinary citations which had been given to defendant's children for their conduct on the school bus.

On the return trip of the bus toward Hobbs, the vehicle approached defendant's residence. Defendant drove a pickup truck in front of the bus in such a manner so as to block the progress of the bus. Orona halted the bus so that she would not strike the pickup. Orona stopped in the right-hand lane and Matthew jumped from the pickup. Although the evidence was conflicting with respect to Matthew's next action, the record suggests that he in some fashion secured a position on the outside of the bus; there was testimony that he hung by his hands from an open window on the driver's side. Orona drove slowly forward. Defendant yelled to Orona to stop the bus. Orona halted the bus. At that time, the pickup was located in front of the bus so as to prevent it from moving forward. Immediately after the bus stopped, defendant accused Orona of having previously struck Shantel during the child's trip home from school. Matthew then went to the front of the bus and opened the hood of the vehicle. He pulled some of the wiring out of the engine. Defendant and Matthew began shouting profanities at Orona. Both defendant and Matthew attempted to open a door to the bus, but it was locked. Defendant repeatedly told Orona to get off the bus because she wanted to beat her up for allegedly spanking Shantel.

Then, Matthew broke the window on the driver's side of the school bus; he and defendant attempted to pull Orona out of the window through the broken glass. Orona resisted the attempt and her arms were cut by the ragged pieces of glass in the window. Phillip Rule, an adult, was riding on the school bus at the time of the incident without official authority. Rule had previously requested a ride into town in the school bus and Orona had agreed.

Rule came to the assistance of Orona. While defendant and Matthew were attempting to pull Orona out through the broken bus window, Rule grabbed Matthew and forced him to release Orona. Matthew then struck Rule in the face with his fist. Thereafter, Matthew went to the rear of the bus and broke out a rear window. During this time, defendant told Orona to come outside of the bus so she could fight with her and repeated threats of bodily harm to Orona.

Both defendant and Matthew repeatedly attempted to enter the bus, but Orona kept the doors closed. The police were summoned. State Police Officer James W. Woods interviewed Shantel, and she stated that she had been shoved by Orona as she exited from the bus and almost fell. Another officer, Richard Miller, testified that he interviewed Shantel and asked her whether Orona had ever spanked her. Shantel answered that the bus driver had shoved the school books of her brothers at her and told her to get off the bus.

Officer Woods testified that when he initially arrived at the scene, he observed the school bus with the driver's window broken out and a rear window shattered. He stat-

ed that Orona was upset, had scratches on her arm, and had some hair pulled loose.

Officer Woods stated that he had spoken to defendant shortly after he arrived and that defendant told him that Orona had spanked Shantel and that she would not put up with that. Defendant also told Woods that she had attempted to get Orona out of the bus so she could talk to her but Orona had refused. Defendant stated that Orona had driven down the road with Matthew hanging on the side of the bus and that he was trying to get Orona to stop.

Following the conclusion of the trial, the jury returned verdicts finding defendant guilty of false imprisonment and battery and acquitted defendant of tampering with a motor vehicle.

## I. MAGISTRATE COURT TRIAL ON MISDEMEANOR CHARGES

Defendant was initially charged by criminal complaint in the Magistrate Court of Lea County with false imprisonment (a felony), contrary to NMSA 1978, Section 30–4–3 (Repl.Pamp.1984), and two misdemeanors, battery, contrary to NMSA 1978, Section 30–3–4 (Repl.Pamp.1984), and tampering with a motor vehicle, contrary to NMSA 1978, Section 66–3–506(D) (Repl. Pamp.1984).

At the preliminary hearing on the charge of false imprisonment, the state requested the magistrate court to bind defendant over for trial in the district court, not only on the charge of false imprisonment, but also to transfer to district court the two related misdemeanor charges. Defense counsel objected, arguing that defendant had a right to be tried in the magistrate court on the misdemeanor charges. The magistrate found probable cause existed to bind defendant over to district court on the charge of false imprisonment and that since all of the charges arose out of the same transaction, the misdemeanor charges would also be transferred to district court.

Subsequent to the entry of the order of the magistrate court binding defendant

over to the district court on the charge of false imprisonment, the state filed a criminal information in the District Court of Lea County charging defendant with false imprisonment (Count 1); battery (Count 2); and tampering with a motor vehicle (Count 3). Defendant did not object in the district court to going forward with the trial on the charges, hence any challenge on appeal predicated upon this issue has been waived.

■ On appeal, a reviewing court will not consider issues not raised in the trial court, *State v. White*, 94 N.M. 687, 615 P.2d 1004 (Ct.App.1980); *State v. Bolen*, 88 N.M. 647, 545 P.2d 1025 (Ct.App.), *cert. denied*, 89 N.M. 5, 546 P.2d 70 (1976), unless the issue involves a matter of jurisdiction or fundamental error. *State v. Lucero*, 97 N.M. 346, 639 P.2d 1200 (Ct.App. 1981), *cert. quashed*, 98 N.M. 51, 644 P.2d 1040 (1982); *see also* NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983). Even a constitutional claim must be properly raised in order to preserve error for review upon appeal. *See State v. Bolen.* Proceeding to trial on the misdemeanor charges in district court, without objection, generally serves as a waiver of any prior defects in the proceedings. *State v. Whitfield*, 81 N.M. 34, 462 P.2d 619 (1969). Even if there had been no waiver, defendant's contentions are without merit.

Since the magistrate court had jurisdiction to hear the misdemeanor charges filed against defendant, defendant contends that she had an absolute right to have the misdemeanor charges tried in magistrate court. Defendant further asserts that she was prejudiced by a joinder of the felony charge with the two misdemeanor charges and that trial of the misdemeanor charges in district court deprived her of a right of de novo appeal from the magistrate court.

NMSA 1978, Magis.Crim.Rule 15(c) (Repl.Pamp.1981) provides:

If the court finds that there is probable cause to believe that the defendant committed an offense not within magistrate court trial jurisdiction, it shall bind the

defendant over for trial. If the court finds that there is probable cause to believe that the defendant committed *only* an offense within magistrate court trial jurisdiction, the action shall be set for trial as soon as possible. [Emphasis added.]

■ The magistrate court rule cannot be construed in such a manner so as to deprive the district court of its constitutional investiture of original jurisdiction. *See* N.M. Const. art. VI, § 13; *State v. Giraudo,* 99 N.M. 634, 661 P.2d 1333 (Ct.App. 1983). Both the magistrate court and district court have original concurrent jurisdiction over trial of misdemeanor charges. *Id.;* NMSA 1978, § 35–3–4(A) (Cum.Supp. 1984). As provided in NMSA 1978, Magis. Crim. Rule 1 (Repl.Pamp.1981), magistrate court rules are to be liberally construed to secure the just and speedy determination of magistrate court actions and not to "extend or limit the jurisdiction of any court, or to abridge, enlarge or modify the substantive rights of any litigant." *Cf. State v. Garcia,* 93 N.M. 51, 596 P.2d 264 (1979) (in the event of a transfer from children's court to district court, all offenses arising from a transaction are transferred).

■ Moreover, the state may elect to file a misdemeanor charge against a defendant in the district court rather than the magistrate court; the prosecutor is not restricted to filing misdemeanor charges in the magistrate court. The state may elect to prosecute by either an information or by grand jury indictment. *State v. Peavler,* 88 N.M. 125, 537 P.2d 1387 (1975); *State v. Vaughn,* 82 N.M. 310, 481 P.2d 98, *cert. denied,* 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); *State v. Reyes,* 78 N.M. 527, 433 P.2d 506 (Ct.App.1967).

■ District courts are courts of original jurisdiction and have the power to try all offenses, misdemeanor and felony. *State v. Manzanares,* 100 N.M. 621, 674 P.2d 511 (1983), *cert. denied,* — U.S. —, 105 S.Ct. 2123, 85 L.Ed.2d 487 (1985); *see also* N.M. Const. art. VI, § 13. Jurisdiction was acquired by the district court by the filing of a criminal information. *State*

*v. Vaughn,* 74 N.M. 365, 393 P.2d 711 (1964). Where defendant is charged with a crime, not amounting to a felony, there is no constitutional or statutory requirement that he must be charged by indictment or information. Either method of charging is proper. *State v. Marrujo,* 79 N.M. 363, 443 P.2d 856 (1968); *see also State v. Marquez,* 87 N.M. 57, 529 P.2d 283 (Ct.App.), *cert. denied,* 87 N.M. 47, 529 P.2d 273 (1974).

■ After an information is filed in the district court, an identical charge or charges pending in a magistrate court should be abandoned. *State v. Tanton,* 88 N.M. 333, 540 P.2d 813 (1975). In furtherance of the interests of orderly procedure, judicial policy mandates against piecemeal prosecutions growing out of the same acts or incident. *Id. See also State v. Tijerina,* 86 N.M. 31, 519 P.2d 127 (1973).

■ The district court possesses concurrent original jurisdiction with the magistrate court over the trial of misdemeanor charges. *E.g. Sanchez v. Attorney General,* 93 N.M. 210, 598 P.2d 1170 (Ct.App.1979). Defendant is entitled to a de novo appeal from a conviction in the magistrate court; however, where the state elects to file a criminal information charging a misdemeanor in the district court, the same charges, if still pending in magistrate court, are normally deemed abandoned. *State v. Tanton.* If the state chooses to proceed by indictment, a defendant has no right to a preliminary hearing despite the fact that proceedings growing out of the same incident may have been originally initiated in magistrate court. *State v. Peavler; Woods v. State,* 84 N.M. 248, 501 P.2d 692 (Ct.App.1972). Similarly, if the state files a criminal complaint in magistrate court and then subsequently files a criminal information in the district court, defendant is not entitled to insist that the trial of the misdemeanor charges be restricted to the magistrate court.

## II. SUFFICIENCY OF EVIDENCE

Defendant contends that the evidence adduced at trial was insufficient to support

her conviction of the offense of false imprisonment. On appeal, an appellate court will only review the evidence to the extent necessary to determine whether the verdict and judgment are supported by substantial evidence. *State v. Seaton*, 86 N.M. 498, 525 P.2d 858 (1974). In reviewing claims of lack of substantial evidence, an appellate court will view the evidence in the light most favorable to the verdict and indulge all permissible inferences in favor of the conviction. *State v. Tovar*, 98 N.M. 655, 651 P.2d 1299 (1982).

 "False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." Section 30-4-3. *See also* NMSA 1978, UJI Crim. 4.00 (Repl.Pamp. 1982). False imprisonment is the unlawful interference with the personal liberty or freedom of locomotion of another. *State v. Clark*, 80 N.M. 340, 455 P.2d 844 (1969) (*Clark I*); *Martinez v. Sears, Roebuck & Co.*, 81 N.M. 371, 467 P.2d 37 (Ct.App.1970) (discussing tort of false imprisonment). The restraint constituting false imprisonment may arise out of words, acts, gestures or similar means which result in a reasonable fear of personal difficulty or personal injuries if the victim does not submit. *Martinez v. Sears, Roebuck & Co.* There does not need to be confinement in jail or holding in custody, and the restraint need only be present for a brief time. *Id.* The act of confining or restraining another against his will constitutes false imprisonment when done with a knowledge of an absence of authority. *Clark I.*

The main testimony for the state was provided by Orona and Rule. Orona was the victim. A pickup truck pulled out into the road in front of the school bus. Orona attempted to pass the truck in another lane, but the truck blocked the way. Defendant was driving the pickup. Orona could not turn back because of trucks coming up behind her. Orona stopped the school bus, and defendant's teenage son ran to the front of the school bus and attempted to open the hood. The boy then went to the window on the driver's side of the school bus and began pounding on the window.

Orona testified that when she opened the window, the boy grabbed it and tore it out. Meanwhile, defendant had been standing outside the bus yelling obscenities and threats at Orona. Defendant and her son grabbed Orona and attempted to pull her out of the bus over the broken glass. Defendant told Orona that she would leave her "dead in the ditch." Orona was cut by the broken glass. Rule struggled with the boy and forced him to release Orona. The boy then hit Rule through the window. Rule and Orona then moved away from the window to wait the arrival of police. The boy went to the front of the bus and pulled out the coil wires in the engine. He then broke the back window of the bus.

Contrary to defendant's contention, the evidence shows more than that defendant blocked the highway. Reasonable inferences from this testimony are that defendant and her son, acting in concert, forced the school bus to a stop, disabled the school bus, and forced Orona, through fear of violence, to remain confined in the bus until police and rescue arrived. Orona was not free to leave without fear of bodily harm; undeniably she was led to believe by defendant's words and actions that she would be attacked.

 The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt. *State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984). Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion. *State v. Robinson*, 94 N.M. 693, 616 P.2d 406 (1980). The jury was not obliged to accept defendant's version of the events. *State v. Vigil*, 87 N.M. 345, 533 P.2d 578 (1975).

 The evidence presented at trial supports the verdict of the jury and constitutes substantial evidence to uphold the verdict.

## III. FALSE IMPRISONMENT

■ Defendant claims that she should not have been charged with false imprisonment. Defendant argues that she should have been charged with failure to yield the right-of-way, contrary to NMSA 1978, Section 66–7–331, or obstructing the highway, contrary to NMSA 1978, Section 66–7–349, in lieu of false imprisonment. In order for a specific statute to apply to the exclusion of a general statute, both statutes must condemn the same offense. *State v. Gutierrez*, 88 N.M. 448, 541 P.2d 628 (Ct.App. 1975). The same proof must be required. *Id.; State v. Riley*, 82 N.M. 235, 478 P.2d 563 (Ct.App.1970).

■ Defendant's contention is without merit. "Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." Section 30–3–4. "False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." Section 30–4–3. These statutes proscribe different conduct and require different proof. Whether double jeopardy prevents defendant from being punished for both offenses under the facts of this case is a different problem, one which is addressed in the last issue.

As shown by the evidence reviewed under Point II herein, defendant's actions amounted to more than a failure to yield the right-of-way or an obstruction of the highway. Viewing the evidence in a light most favorable to support the judgment below, together with the reasonable inferences that may properly be drawn therefrom, defendant positioned her pickup for the purpose of blocking the school bus, assaulting, battering, intimidating and confining Orona within the school bus. *State v. Tovar*. When Orona attempted to drive around the pickup, defendant, in concert with her son, repositioned the pickup so as to again block the bus and continue restraining Orona. False imprisonment involves an element of restraint which the other two misdemeanor statutes, relied upon by defendant on appeal, do not. UJI Crim. 4.00.

## IV. CROSS-EXAMINATION

Defendant contends that the trial court erred in ruling that defendant could not cross-examine Orona concerning whether she violated a school regulation, which prohibited school bus drivers from giving rides to individuals who are not enrolled school children. Defendant also argues that the trial judge improperly excluded the regulations themselves from being received into evidence.

During cross-examination of Orona, defendant was permitted to question the victim concerning whether Orona had obtained permission from her supervisors to give Phillip Rule a ride on the school bus on the date in question. Orona admitted that she had not. Defendant was also permitted to ask Rule on cross-examination whether he had received signed authorization to ride the school bus; Rule conceded that he did not have that authority.

■ The trial court had discretion to deny cross-examination concerning specific instances of conduct offered for the purpose of attacking Orona's credibility if the conduct was not probative of the victim's truthfulness or untruthfulness. NMSA 1978, Evid.R. 608(b) (Repl.Pamp.1983); *State v. Biswell*, 83 N.M. 65, 488 P.2d 115 (Ct.App.1971); *see State v. Miller*, 92 N.M. 520, 590 P.2d 1175 (1979). The regulations excluded as evidence were not probative of truthfulness and no other claim of relevance has been made. No error arose from the trial court's ruling.

## V. CLAIM OF BIAS BY TRIAL COURT

■ Defendant's next argument is that the trial court exhibited bias in favor of the state. *See State v. Sedillo*, 76 N.M. 273, 414 P.2d 500 (1966). On appeal, the question is whether the conduct of the judge deprived the defendant of a fair trial. *State v. Blakley*, 90 N.M. 744, 568 P.2d 270 (Ct.App.1977). The brief-in-chief sets forth

a number of specific incidents which defendant claims evidence the fact that the trial judge acted improperly.

■ Defense counsel does not recite in the brief-in-chief whether at trial any objection was ever voiced concerning the appropriateness of the judge's remarks. A failure to object to remarks by the trial court generally precludes appellate review of that issue. *See State v. Blakley.* We discuss, however, the specific incidents complained of by defendant because she contends that the cumulative impact of the judge's conduct deprived her of a fair trial.

■ The first act of the trial court complained of by defendant occurred when the trial court ordered defense counsel to remain at the microphone. Defense counsel explained that he needed to refer to a chart which had been introduced into evidence. The trial judge then allowed defendant to move to the chart. Nothing improper or prejudicial can be read into this incident.

Defendant next complains of the trial court's actions when the court asked defense counsel to stay behind the podium and to rephrase his question. Defendant argues that this suggested to the jury that his question was improper. However, as defendant concedes, defense counsel was allowed to ask "[v]irtually the identical question." Again, no prejudice resulted. *See State v. Clark*, 83 N.M. 484, 493 P.2d 969 (Ct.App.1971) (even if court's remark was improper, defendant was not deprived of a fair trial because remark did not hamper presentation of defense) (*Clark II*).

The third incident occurred when defense counsel asked for a few moments to allow the jury to examine a defense exhibit before proceeding. The judge stated, "Just go ahead. It is not a complicated map." Defendant does not explain why this was improper, nor does she explain how her defense was prejudiced. The trial court's remark did not constitute an opinion as to the weight of the exhibit. A trial judge has broad discretion in controlling the conduct of the trial. *City of Roswell v. Galle-*

*gos*, 77 N.M. 170, 420 P.2d 438 (1966). This remark was not error.

The trial judge subsequently sustained an objection by the state to a question posed by defense counsel. The court stated "Yes, Mr. Hoglund, you are persistently leading the witness. Refrain from doing that, sir." Defendant does not deny that the question was leading or that defense counsel had been leading the witness. The court's remarks were an appropriate exercise of the court's control over the interrogation of the witness. *See State v. Blakley.*

Next, defendant complains about the trial court asking whether a witness was in the courtroom on the previous day. This question was not improper.

During the state's case-in-chief, a witness testified that she saw the school bus facing east going west. Defense counsel then asked if the bus was facing east going west. The witness replied that the bus was in reverse. Defense counsel asked if the bus was backing up. The witness said yes. Defense counsel then stated, "Why don't you just say, 'The school bus backed up?'" The court stated, "She did say it, you just didn't understand her." The trial judge may exercise reasonable control over the interrogation of witness. *Clark II.* Defense counsel's question was argumentative.

■ Defendant cites another incident when, during defendant's testimony, the court, in response to an objection by the state, admonished defense counsel not to lead the witness. Defense counsel argued that the question was not leading. The court told defense counsel to proceed. Defendant does not argue that the presentation of the defense was hindered by this ruling. *See ClarkII.* The judge's admonition was not a comment on the evidence. It was not error.

Two more incidents occurred during defendant's testimony. During direct examination of defendant, the following colloquy occurred:

Mr. Hoglund: And is there anything else on that square.

Ms. Muise: Yes, there is a stop sign there.

Mr. Hoglund: No. Is there on what your calling the square?

Ms. Muise: Oh, there's a square here.

Mr. Hoglund: Do you see this?

Ms. Muise: Yes, sir.

Mr. Patterson: Your Honor, he's not only leading, he is arguing with his own witness.

The Court: Yes. Mr. Hoglund, she is looking at it. If she can't see it, she can't see it. Refrain from that.

Following the court's ruling, the tape recorded record reveals the sound of whispering. The court then stated, "Mr. Hoglund, are you conferring with your client about what her testimony will be?" Defense counsel replied, "No, I am not, Your Honor." The judge said, "All right." This statement does not indicate prejudicial conduct by the trial court. Defendant does not contend that it was improper for the trial court to sustain this objection.

Another incident complained of by defendant occurred during her testimony when the state and defense counsel were arguing over applicable New Mexico law regarding authority to make a citizen's arrest. The judge asked why this issue was relevant since defendant had not contended that she in fact attempted to effect a citizen's arrest. Defense counsel stated, "That is not the question, Your Honor. It is whether she was authorized to do so if she chose to do so." The judge responded, "All right." Defendant does not explain why the judge's conduct was improper or prejudicial. This statement by the trial court was not error.

Several other incidents cited by defendant occurred during the remainder of the trial. During the state's rebuttal testimony, the trial court overruled a defense objection that a question was leading, curtailed defense cross-examination on the basis that a witness had answered a question to the extent of the witness' knowledge, and required defense counsel to rephrase an argumentative question. On another occasion, defense counsel asked a witness why defendant's daughter was not allowed to ride on the school bus anymore. The witness answered that it was because of concern over the children's safety. Defendant's brief states that this testimony was repeated. When defense counsel attempted to pursue the matter still further, the court instructed him to move on to a new subject. Defense counsel moved for a mistrial. The motion was denied. Again, during closing argument, the court stated, "Five minutes, Mr. Hoglund," when defense counsel had five minutes left in his argument. Defendant contends this comment of the court was improper.

NMSA 1978, Evid.Rule 611(a) (Repl. Pamp.1983) states that:

> The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to
>
> > (1) make the interrogation and presentation effective for the ascertainment of the truth,
> >
> > (2) avoid needless consumption of time, and
> >
> > (3) protect witnesses from harassment or undue embarrassment.

*See also State v. McCarter,* 93 N.M. 708, 604 P.2d 1242 (1980) (trial court has right to exercise reasonable control over the interrogation of witnesses); *State v. Blakley* (it was not error to tell defense counsel to straighten his questions out). The limits of cross-examination and the control of an attorney's arguments to the jury are matters within the discretion of the trial court. *State v. White,* 101 N.M. 310, 681 P.2d 736 (Ct.App.), *cert. denied,* 101 N.M. 189, 679 P.2d 1287 (1984) (control of counsel's argument to the jury); *State v. Wesson,* 83 N.M. 480, 493 P.2d 965 (Ct.App.1972) (cross-examination). Defendant has not demonstrated any error in connection with the other rulings during trial or the comment during closing argument.

The final contention raised by defendant relates to the ruling by the trial court upon

an objection made during the state's rebuttal argument. During defendant's closing argument, defense counsel attacked the testimony of the state's witnesses as not being credible. Defense counsel, however, never expressly stated that the witnesses had lied or had committed perjury. During rebuttal argument, the prosecutor argued that the state's witnesses had nothing to gain by misrepresenting the facts and then stated, "but somehow we seem to have this big conspiracy to commit perjury for the purpose of convicting Twila Muise." Defense counsel immediately objected that the argument was inflammatory, not supported by the evidence, and had been uninvited by defense counsel's closing argument. The trial court then stated, "Mr. Hoglund, this is argument. You do substantially the same thing. Do not interfere with this attorney. Proceed."

■ The trial court has a wide discretion in dealing with counsel's argument to the jury. The prosecutor was entitled to a reasonable degree of latitude in closing remarks, *State v. Pace*, 80 N.M. 364, 456 P.2d 197 (1969), and was entitled to respond to defense counsel's argument. *State v. Montoya*, 95 N.M. 433, 622 P.2d 1053 (Ct. App.1981). Considered in context, the trial court's remarks, neither individually nor collectively, indicated a bias by the court against defendant. During closing argument, the record also indicates that only a few minutes earlier the judge admonished the jury to disregard a statement of the prosecutor in response to the defense's objection to the prosecutor's argument.

## VI. MERGER OF OFFENSES

Defendant also argues that the offenses of false imprisonment and battery merged. Defendant contends that the constitutional prohibition against double jeopardy precludes her from being sentenced for both offenses.

■ The test utilized to determine whether two offenses merge for purposes of determining whether double jeopardy occurred is the "same evidence test." *State v. Tanton*. Double jeopardy principles re-

quire two offenses to merge when one offense necessarily involves the other. *State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct. App.1985). To determine whether one offense "necessarily involves" another offense, the definitions of the two crimes are examined to determine whether the elements are the same. *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977). An included offense does not have any element not included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the included offense. *State v. Garcia*, 100 N.M. 120, 666 P.2d 1267 (Ct.App.1983). However, this determination is not made in the abstract. "[W]e no longer consider the statutory offenses in a vacuum but instead regard the offenses in light of the facts before us." *State v. Brecheisen*, 101 N.M. 38, 677 P.2d 1074, 1077 (Ct.App.), *cert. denied*, 101 N.M. 11, 677 P.2d 624 (1984); *see also State v. DeMary*, 99 N.M. 177, 655 P.2d 1021 (1982).

■ Defendant submits that, under the circumstances of this case, battery was a lesser included offense of false imprisonment. Defendant argues, however, that the false imprisonment conviction must be reversed. Even if battery were a necessarily included offense in this case, which we determine was not the case, the remedy would be to vacate the sentence imposed for battery, not the sentence imposed for false imprisonment. This is because the offense which merges is the lesser included offense. *State v. Jacobs*.

■ Under the facts of this case, the offenses did not merge. Battery requires a touching or application of force—false imprisonment does not. False imprisonment requires a restraining or confining with knowledge of lack of legal authority—battery does not. The touching or application of force necessary to prove the battery charge does not have to amount to restraining or confining the victim. On the other hand, it is not necessary to prove contact or application of force to prove restraint sufficient to sustain a charge of false imprison-

ment. *See Martinez v. Sears, Roebuck & Co.* (false imprisonment may arise out of words, acts, gestures or similar means).

The offense of false imprisonment was proven by evidence showing that defendant and her son forced the bus to a stop, disabled it, and caused Orona to remain on the bus through fear caused by verbal threats and the breaking of the windows. Battery was proven by evidence showing that defendant and her son grabbed Orona and jointly attempted to drag her out of the bus over the broken glass.

Defendant was not placed in double jeopardy by her conviction and sentencing for both the crimes of false imprisonment and battery.

The convictions and sentences are affirmed.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.